UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PATRICK OWEN MADSEN, | Case No. 3:14-cv-00573-MMD-WGC |
| Petitioner, | |
| v. | ORDER |
| RENEE BAKER, *et al.*, | |
| Respondents. | |

This *pro se* habeas proceeding comes before the Court for consideration of the remaining claim in petitioner's 28 U.S.C. § 2254 petition for writ of habeas corpus. (ECF No. 6.) Respondents have answered (ECF No. 28), and petitioner has replied (ECF No. 29). Following an order of the Court, respondents have filed a supplemental answer (ECF No. 42), and petitioner has filed a supplemental reply (ECF No. 43).

**I.     BACKGROUND**

Petitioner herein challenges his convictions on two counts of lewdness with a child under the age of 14. (ECF No. 6.) The convictions arose out of incidents that took place between petitioner and 13-year-old A.A. on two separate dates in late May 2006, when petitioner was temporarily living with A.A.'s family. (ECF No. 12-17 at 57-60, 70; ECF No. 12-20 at 8.) In the first incident, A.A. testified that petitioner kissed her on the neck, licked her vagina, and then forced her to have sexual intercourse with him. (ECF No. 12-17 at 57-59.) In the second incident, A.A. testified that petitioner grabbed and licked her breasts

and then forced her to have sex with him again. (*Id.* at 59-60.) A.A. did not immediately tell anyone about the incidents. (*Id.* at 60.)

In late July 2006, A.A.'s mother was cleaning A.A.'s room and bathroom and found razors, scissors, a box that had been stabbed repeatedly, cigarette butts, and condoms. (*Id.* at 60-64, 68.) She asked A.A. about the box and the other things she found, and A.A. told her about the incidents with petitioner. (*Id.* at 60, 68-69.) A.A.'s mother confronted petitioner and then contacted police. (*Id.* at 69.)

Officer Maribah Cowley interviewed A.A., A.A.'s mother, and petitioner. (ECF No. 12-20 at 6; ECF No. 12-17 at 60-61.) At trial, Cowley testified that petitioner told her he did not know where, when or how the incidents could have happened but that he drinks heavily; that when he drinks he goes to sleep and is done and can't be woken up; and that he did not know what happened and never intended to have sex with A.A. (ECF No. 12-20 at 7.) Cowley also testified that petitioner said "apparently he did have sex with [A.A.]. He does not deny that. He does not remember it." (*Id.*)

On December 20, 2006, petitioner was charged by way of criminal complaint with two counts of sexual assault with a minor under fourteen years of age and two counts of lewdness with a child under the age of fourteen. (ECF No. 9-1.) After a two-day trial, a jury found petitioner guilty on all four counts. (ECF Nos. 10-5, 10-6.) Following sentencing and entry of judgment, petitioner appealed. (ECF No. 10-15.)

On December 14, 2009, the Nevada Supreme Court reversed and remanded. (ECF No. 11-17.) In relevant part, the court held that Cowley's statements about what A.A. had told her, including things A.A. said petitioner had said, had been erroneously admitted because in the context of the case those statements were hearsay and double hearsay. (*Id.* at 3-6.) The court noted specifically, however, that petitioner's statements to Cowley were properly admitted. (*Id.* at 4 n.2.)

After a second trial, the jury again found petitioner guilty on all four counts. (ECF Nos. 12-20, 12-21.) Petitioner was sentenced to life with the possibility of parole after

2

twenty years on the sexual assault counts, and to life with the possibility of parole after ten years on the lewdness counts—all counts to run concurrent. (ECF No. 13-3.) The judgment of conviction was issued on October 7, 2010. (ECF No. 13-4.)

Petitioner appealed. (ECF No. 13-6.) On July 14, 2011, the Nevada Supreme Court affirmed in part, reversed in part, and remanded. (ECF No. 13-15.) The court affirmed the lewdness convictions but vacated the sexual assault convictions. (*Id.* at 3-4.) In so doing, the court rejected petitioner's assertion that there was insufficient evidence to support the convictions but found that the trial court's failure to give an instruction on reasonable mistaken consent required reversal of the sexual assault convictions. (*Id.* at 2-4.) On remand, the trial court granted a motion by the State to dismiss the criminal information as to the sexual assault charges. (ECF Nos. 13-18, 13-21.)

On July 20, 2012, petitioner filed a post-conviction habeas petition in the state district court. (ECF No. 14-5.) On December 3, 2012, petitioner filed an amended habeas petition in the state district court. (ECF No. 14-9.) The state district court denied the amended petition by order filed October 8, 2013. (ECF No. 14-10.)

Petitioner appealed the denial of his post-conviction habeas petition. (ECF No. 14-11.) On May 13, 2014, the Nevada Supreme Court affirmed. (ECF No. 14-18.) Remittitur issued on June 9, 2014. (ECF No. 14-19.)

On November 4, 2014, petitioner dispatched the instant federal habeas petition to this Court. (ECF No. 6 at 1.) Respondents moved to dismiss the petition (ECF No. 8), and the Court found that Grounds 1, 2, and 3 were unexhausted (ECF No. 22). Petitioner thereafter abandoned his unexhausted claims. (ECF No. 23.) Thus, the only ground remaining for the Court's consideration is Ground 4.

**II.    LEGAL STANDARD**

28 U.S.C. § 2254(d) provides the legal standards for this court's consideration of the merits of the petition in this case:

3

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). This court's ability to grant a writ is limited to cases where "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted.)

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Andrade*, 538 U.S. 63 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

4

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g.*, *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." *Id.* at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

As the state courts reached the merits of petitioner's claims, their decisions are entitled to deference under AEDPA and may not be disturbed unless they were ones "with which no fairminded jurist could agree." *Davis v. Ayala*, 135 S. Ct. 2187, 2208 (2015).

5

## III.  ANALYSIS

Ground 4 of the petition asserts that petitioner's due process rights were violated because the Nevada Supreme Court erroneously found sufficient evidence to support his convictions "based on their opinion" that petitioner "also admitted to the police that he had sex with the victim." (ECF No. 6 at 10.)

Petitioner raised this claim as Ground 21 of his state post-conviction habeas petition. He asserted:

> Nevada Supreme Court reversed in part (see order attached) stating Petitioner had made a confession to police, and thus affirmed a lewdness conviction, based upon this confession of having sex (alleged). State dismissed S/A convictions with prejudice immediately after. State's witness A.A. testified to rape, not consensual sex. Lewdness is not sex [penetration]. Therefore Petitioner was not given opportunity to face accuser for 3rd trial and force States' burden to prove original indictment charges beyond a reasonable doubt at a fair trial.

(ECF No. 14-9 at 13.) On direct appeal, the Nevada Supreme Court held as follows:

> First, Madsen contends that insufficient evidence was produced at trial to support the charges against him. We disagree. The victim testified that Madsen forced her to engage in sexual intercourse twice, fondled and licked her breasts, and put his mouth on her vagina. This evidence alone was sufficient to support the convictions. *See Mejia v. State*, 122 Nev. 487, 493 n.15, 134 P.3d 722, 725 n.15 (2006) ("[T]his court has 'repeatedly held that the testimony of a sexual assault victim alone is sufficient to uphold a conviction' so long as the victim testifies with 'some particularity regarding the incident.'" (quoting *LaPierre v. State*, 108 Nev. 528, 531, 836 P.2d 56, 58 (1992))). While he contends that some of the victim's testimony contradicted her prior statements, it was for the jury to determine the weight and credibility to give the conflicting testimony. *Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981). In addition, both Madsen's semen and the victim's DNA were recovered from stains on the sofa on which the victim indicated the abuse occurred. Madsen also admitted to the police that he had sex with the victim. We conclude that this evidence was sufficient for a rational juror to find beyond a reasonable doubt that Madsen was guilty of lewdness with a child under the age of 14 and sexual assault of a child under the age of 14. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992); NRS 201.230(1); NRS 200.366(1), (3)(c).

(ECF No. 13-15 at 2-3.)

The trial court rejected Ground 21 of petitioner's state habeas petition as follows:

> Even if the Nevada Supreme Court erroneously believed Madsen confessed, the evidence was still sufficient to convict (victim testimony and DNA evidence). Madsen seems to claim the right to be retried on all charges because the sexual assault convictions were reversed. This claim ignores the fact that even if the State re-tried Madsen on the sexual assault charges, the lewdness counts were affirmed.

(ECF No. 14-10 at 14.)  The trial court also referred to Ground 15 of the petition, which it had rejected in part on the grounds that "[i]n any event Maribah Cowley did testify that Madsen said he apparently did have sex with the victim." (*Id.* at 12.)  The Nevada Supreme Court affirmed the trial court's decision without addressing this specific claim. (*See* ECF No. 14-18.)  Accordingly, as the trial court's decision is the last reasoned decision of the state courts, the Court looks to that decision in evaluating petitioner's claim.  *See Murray v. Schriro*, 882 F.3d 778, 801 (9th Cir. 2018).

The trial court's rejection of petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law.  Petitioner stated that he "apparently did have sex with [A.A.]. He does not deny that. He does not remember it." (ECF No. 12-20 at 7.)  The Court recognizes that whether this actually amounted to a confession *is* debatable as petitioner's statement was somewhat equivocal.  But while the fact of the confession is debatable, it cannot be said that *no* reasonable jurist could have concluded that petitioner confessed.  Furthermore, the trial court concluded that even if the Nevada Supreme Court was wrong that petitioner had confessed to having sex with A.A., there was still sufficient evidence to support the lewdness convictions even without the confession.[1]  This conclusion was not objectively unreasonable.

---

[1]The Court notes that, given the consolidated discussion of the evidence for all four counts, it is not at all clear that the Nevada Supreme Court relied on petitioner's admission in concluding there was sufficient evidence on the lewdness counts as opposed to the sexual assault counts.  The factual predicate for the lewdness charges were the acts involving the breasts and the vagina; the factual predicates for the sexual assault charges were the acts of sexual intercourse.  It is thus possible that the Nevada Supreme Court did not understand the admission that petitioner had sex with A.A. to relate to the lewdness charges.  However, for the purposes of addressing petitioner's petition, the Court will presume that it did.

7

A federal court collaterally reviewing a state court conviction for sufficiency of the evidence does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir.1992). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The *Jackson* standard "looks to whether there is sufficient evidence which, if credited, could support the conviction." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). That is, "faced with a record of historical facts that supports conflicting inferences" the court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *McDaniel v. Brown*, 558 U.S. 120, 133 (2010).

A.A. testified that, when she was 13 years old, petitioner licked her vagina and grabbed and licked her breasts before having sex with her. Petitioner was over 18 years old at the time. (ECF No. 12-17 at 57-60.) A rational trier of fact, crediting A.A.'s testimony, could find beyond a reasonable doubt that petitioner willfully committed two lewd or lascivious acts on the body of A.A., a child under the age of 14, with the intent of "arousing, appealing to, or gratifying the lusts or passions" of A.A. *See* NRS § 201.230. Sufficient evidence therefore supports petitioner's lewdness convictions. The Nevada Supreme Court's conclusion that this evidence alone was sufficient was not contrary to, or an unreasonable application of, clearly established federal law.

Petitioner makes several unavailing arguments in an attempt to demonstrate that the state courts' decisions were wrong.

Petitioner argues that he could not have been convicted of lewdness based on his admission of having sex with A.A. because lewdness cannot be committed through sex; it is an act of touching against the will of the victim. He suggests that even if lewdness can be committed by sexual intercourse, there was no evidence of consensual sex, only

sexual assault. As just noted, petitioner's lewdness convictions did not depend on a finding that petitioner had sex with A.A., consensual or not. The convictions were supported by A.A.'s testimony that petitioner licked her vagina and grabbed and licked her breasts. Thus, whether lewdness can be committed through an act of sexual intercourse is irrelevant. The argument is, at any rate, without merit, as under state law, lewdness may be committed through consensual sex. *State v. Koseck*, 936 P.2d 836, 838 (1997). The Nevada courts did not, therefore, "ignore[] their own law" in affirming petitioner's conviction. (*See* ECF No. 6 at 10.)

Petitioner asserts in his reply that A.A.'s testimony could not support the convictions because she was not a "victim" as defined in NRS § 200.364. (*See* ECF No. 29 at 3-4). This contention is without merit. Whether A.A. was a victim under Chapter 20 of the Nevada Revised Statutes—the sexual assault chapter—has no bearing on whether her testimony could support petitioner's lewdness convictions.

Petitioner argues that there was no evidence of his confession other than "police hearsay" and "prosecutorial vouching." Cowley's testimony as to petitioner's statements did not constitute hearsay.[2] NRS § 51.035(3)(a). There was, therefore, evidence of petitioner's confession. Petitioner moreover fails to explain how his confession was

---

[2]To the extent petitioner challenges the admission of his confession by way of Cowley's testimony, the statement was properly admitted under state law. As a general rule, federal courts cannot review a trial court's evidentiary rulings. *Crane v. Kentucky*, 476 U.S. 683, 689 (1986). A state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it is so fundamentally unfair as to violate due process. *Dillard v. Roe*, 244 F.3d 758, 766 (9th Cir. 2001); *see also Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998) (The federal court's "role is limited to determining whether the admission of evidence rendered the trial so fundamentally unfair as to violate due process."). Habeas relief is thus available only if an evidentiary ruling or rule was arbitrary, disproportionate to the end it was asserted to promote, or so prejudicial that it rendered the trial fundamentally unfair. *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006); *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir.1995). Petitioner's due process rights were not violated by the admission of his statements to Cowley. Petitioner's statements to Cowley were not hearsay under state law, and would not be considered hearsay under federal law. *See* NRS § 51.035(3)(a); Fed. R. Evid. 801(d)(2) (statement of party opponent is not hearsay). It cannot therefore be said that admission of the statements was unfair.

introduced through "prosecutorial vouching."[3]   Petitioner's argument in this regard is therefore without merit.

Petitioner argues that the Nevada Supreme Court "ignored . . . witnesses [sic] prior testimony to gain an illegal conviction." (ECF No. 6 at 10).  He also asserts that the trial court improperly excluded evidence that A.A. "previously consented." (*Id.*)  In his reply, petitioner asserts that A.A. first told people that petitioner had threatened her but at the preliminary hearing testified that he had not.  (*See* ECF No. 29 at 5.)  He identifies no other evidence of consent that was "improperly excluded."[4]   The Court therefore presumes that A.A.'s preliminary hearing testimony is the "prior testimony" and evidence of "previous[] consent[]" to which petitioner refers.

At the preliminary hearing, A.A. denied that petitioner had threatened her; at trial she testified that petitioner had forced her to have sex.  A.A.'s preliminary hearing testimony was brought out on cross examination, and A.A. admitted that was what she had said. (*See* ECF 12-17 at 57-60, 65-66.)  Thus, the evidence petitioner believes shows A.A. "previously consented" was introduced at trial.  Insofar as petitioner asserts that the fact A.A. made inconsistent statements compels a finding that the evidence was insufficient to support his convictions, the argument is without merit.  A.A.'s inconsistent statements go to her credibility and not to the sufficiency of the evidence.  It was for the jury to determine A.A.'s credibility, and the "jury's credibility determinations are . . . entitled to near-total deference under *Jackson*." *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004); *see also McDaniel v. Brown*, 558 U.S. 120, 131–34 (2010) (the reviewing federal

---

[3]The only vouching claim in the petition relates to petitioner's confession.  The reply asserts a number of other ways that the prosecutor allegedly engaged in improper vouching (*see* ECF No. 29 at 7-8), but the Court will not consider these claims raised for the first time in the reply. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003)).

[4]Petitioner does refer in his reply to an allegation that A.A. had been having sex with another person. However, even if true, it would in no way establish that she consented to have sex with petitioner.

10

court must presume that the trier of fact resolved all inconsistencies in favor of the prosecution, and must defer to that resolution). To the extent A.A.'s testimony conflicted with her preliminary hearing testimony, such does not provide a basis for finding the evidence was insufficient to support petitioner's convictions.

Relatedly, petitioner argues that exclusion of evidence that A.A. "previously consented" "shifted the[] burden of proof required to uphold a conviction." (ECF No. 6 at 10.) It is not clear what petitioner means by this. However, the Court would note that to the extent petitioner is referring to A.A.'s testimony at the preliminary hearing that she was not threatened, that evidence, as just discussed, *was* admitted at trial. In his reply, petitioner takes issue with the prosecutor's closing argument in which he stated that consent is not a defense to the sexual assault charges, thereby "shifting its burden." However, the Nevada Supreme Court overturned petitioner's sexual assault convictions; the argument as to those convictions is thus moot. To the extent petitioner argues that this argument denied him a fair trial with respect to the lewdness convictions, the Nevada Supreme Court rejected any such argument because consent is not a defense to lewdness. (ECF No. 13-15 at 4 n.1.) Aside from being a matter of state law, which the court cannot review, this conclusion was not objectively unreasonable.

Petitioner also argues that "the court rejected Madsen's jury instruction." (ECF No. 6 at 10.) Again, to the extent petitioner is arguing entitlement to relief based on the trial court's rejection of his jury instruction on reasonable mistaken consent, the claim is moot as to the sexual assault charges and without merit with respect to the lewdness charges because consent is not a defense to lewdness.

In his reply, petitioner also cites to evidence he argues proves his innocence or proves the witnesses were lying, some of which was presented at trial and some of which was not. (ECF No. 29 at 5-6). Evidence that was not presented at trial may not be considered in evaluating whether there was sufficient evidence to support a conviction. *Herrera v. Collins*, 506 U.S. 390, 402 (1993) ("[T]he sufficiency of the evidence review

11

authorized by *Jackson* is limited to 'record evidence.' *Jackson* does not extend to nonrecord evidence."). As to evidence that was presented, the Court cannot second guess the determinations the jury made in "resolv[ing] conflicts in the testimony, weigh[ing] the evidence, and draw[ing] reasonable inferences from basic facts to ultimate facts.[5] *See Jackson*, 443 U.S. at 319. Thus, to the extent petitioner asserts that the conflicting evidence entitles him to relief, the assertion is without merit.

Finally, in Ground 4 petitioner states: "Madsen is entitled to his own statements." (ECF No. 6 at 10.) The reply and petitioner's various other filings suggest this statement intends to assert a claim that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to provide the defense with audio tape recordings of petitioner's August 4, 2006, interview with Officer Maribah Cowley.[6] (*See* ECF Nos. 29, 34, 37 & 40.) Petitioner raised this claim in Grounds 11 and 16 of his state post-conviction habeas petition. (*See* ECF No. 14-9 at 10-11.) The Nevada Supreme Court did not address petitioner's specific claim in this regard, and therefore the state trial court's decision is the last reasoned opinion.

The trial court rejected petitioner's *Brady* claim on the grounds that it was conclusory and because "[n]o evidence in the record supports a claim that the State withheld recordings of any witness." (ECF No. 14-10 at 10, 12.) The state courts' conclusion was not objectively unreasonable.

---

[5]Petitioner's reply suggests that the prosecutor knowingly introduced perjured testimony in violation of *Napue v. Illinois*, 360 U.S. 264 (1959) but the petition contains no such claim. To the extent the petition could be read to suggest a *Napue* claim based on "prior witness[] testimony," the claim fails because inconsistencies in a witness' testimony are insufficient to establish a *Napue* violation. *See United States v. Williams*, 547 F.3d 1187, 1202 n.13 (9th Cir. 2008). The Court will not consider the petitioner's other *Napue* claims raised for the first time in reply. *Zamani*, 491 F.3d at 997.

[6]Petitioner argues in his reply that the State also failed to turn over tape recordings of A.A.'s and A.A.'s mother's interviews with Cowley, but the petition contains no such claim – directly or arguably – and the Court declines to consider this claim raised for the first time in reply. *Zamani*, 491 F.3d at 997.

A *Brady* claim requires showing that the prosecution failed to turn over to the defense material evidence favorable to an accused. *Strickler v. Greene*, 527 U.S. 263, 281 (1999). The record, however, supports a conclusion that the State disclosed the recording to petitioner's counsel, which defeats petitioner's *Brady* claim. Specifically, petitioner himself filed a *pro se* document on April 7, 2008—after his first trial but before his second—indicating that his attorneys had never given him "three recordings listed in discovery that the State provided." (ECF No. 10-23 at 3; *see also* ECF No. 13-19 at 2 (petitioner's *pro se* request seeking a court order directing the public defender's office to provide petitioner with "discovery recordings produced by Lincoln County Sheriffs [*sic*] Office: Aton, Madsen, and Hudson, also Interview by M. Cowley"); ECF Nos. 14, 14-4.) The record further reflects that on November 27, 2007—before petitioner's first trial—the public defender's office issued a subpoena to the Sheriff's office seeking specifically "a copy of any and all audio and/or video interviews conducted in this case." (*See* ECF No. 14.) Taken together, these documents suggest the audio recordings were turned over by the State to defense counsel, as they were specifically sought by petitioner's attorneys, they were listed in discovery receipts viewed by petitioner, and petitioner sought court orders directing his own attorneys to provide the recordings to him. Petitioner's supplemental reply does not provide any persuasive argument to the contrary. He argues only the trial court's issuance of three subpoenas after his trial shows that the recordings were not produced until then. (ECF Nos. 12-25, 13, 13-1.) The subpoenas, which broadly sought petitioner's entire case file, do not support a conclusion that the recordings had until that point been withheld, particularly in light of the other evidence on the record specifically suggesting the contrary conclusion. The state courts' conclusion that no evidence supported petitioner's *Brady* claim was therefore not an objectively unreasonable determination of the facts.

## IV.     CERTIFICATE OF APPEALABILITY

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

This court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The Court will therefore deny petitioner a certificate of appealability.

## V. CONCLUSION

In accordance with the foregoing, it is order that the petition for writ of habeas corpus (ECF No. 6) is denied and this action is hereby dismissed with prejudice.

It is further ordered that petitioner will be denied a certificate of appealability, as reasonable jurists would not find the Court's decision to be debatable or wrong, for the reasons discussed herein.

The Clerk of Court shall enter final judgment accordingly, in favor of respondents and against petitioner, dismissing this action with prejudice.

DATED THIS 11th day of April 2018.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE